UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

DANIEL D. HARRIS
     Plaintiff,

  -vs-                                 Case No. 2:10-cv-14867
                                        Hon. Sean F. Cox

WORLD FINANCIAL NETWORK
NATIONAL BANK,
ALLIANCE DATA SYSTEMS CORP.,
ALLIED DATA SYSTEMS,
     Defendants.

## FIRST AMENDED COMPLAINT & JURY DEMAND

*Dan  Harris states  the following claims for relief:*

### Jurisdiction

1.     This Court has jurisdiction under the diversity provision of the United States Code, 28 § U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

### Parties

2.     The Plaintiff to this lawsuit is Dan Harris ("Mr. Harris") who resides in Schwartz Creek, Michigan.

3.     The Defendants to this lawsuit  are:

     a.     World Financial Network National Bank ("World Financial") which is a corporation that conducts business in Michigan.

     b.     Alliance Data Systems Corp., the parent corporation to World Financial and/or  the

1

successor to and/or affiliate of World Financial, which conducts business in Michigan.

c.     Allied Data Systems, the parent corporation to World Financial and/or the successor, to and/or affiliate of World Financial, which conducts business in Michigan.

d.     The Defendants are affiliated with each other and act as each others agents in the placement of the telephone calls at issue,  and will be referred to collectively herein as "World Financial".

## **Venue**

4.     The transactions and occurrences which give rise to this action occurred in Genesee County.

5.     Venue is proper in the Eastern District of Michigan.

## **General Allegations**

6.     This case involves a series of no less than 55 telephone calls placed by World Financial to Mr. Harris on his cell phone to collect on an account that does not belong to Mr. Harris and on a debt that Mr. Harris  does not owe.

7.     On or about August 18, 2010, World Financial communicated with Dan Harris for the first time by telephoning him on his cell phone.

8.     World Financial called Mr. Harris using an automatic telephone dialing system.

9.     The greeting from World Financial in that call was administered by an artificial or pre-recorded voice indicating that there was an "Important Message" from World Financial.

10.    The automated message indicated that Mr. Harris should hold for the message.

11.    Mr. Harris did hold for a period of approximately 30 seconds before he hung up because he became frustrated when noone came on the line.

2

12.     World Financial was attempting to collect a debt in that communication and every other communication to Mr. Harris.

13.     Moments later World Financial called again on Mr. Harris' cell phone.

14.     World Financial communicated the same automated or pre-recorded message that it did in the first call.

15.     In the two and a half week period from August 21 through September 4, World Financial called Mr. Harris on his cell phone 42 more times.

16.     On August 21, 2010, World Financial called Mr. Harris 8 times.

17.     In the period from October 4 through October 27, 2010, World Financial called Mr. Harris 9 times.

18.     World Financial called Mr. Harris at least 55 times.

19.     Each time World Financial telephoned Mr. Harris, it used an automatic telephone dialing system.

20.     In most telephone communications, World Financial communicated with an automated or pre-recorded voice messaging system.

21.     In each instance in which a World Financial agent actually came on the line, Mr. Harris told the agent that he did not owe the account and that it should stop calling him.

22.     Mr. Harris did not have an account with World Financial and never consented to allow it to call him.

23.     Mr. Harris did not have any prior business relationship with World Financial.

24.     Within days of the first call, Mr. Harris called World Financial on two separate occasions and told them  they were calling the wrong number and to stop calling him.

3

25. World Financial continued to call even though it had notice that Mr. Harris did not want it to call him.

26. Mr. Harris did not owe the bill that World Financial sought to collect from him and never had such an account.

27. World Financial called Mr. Harris repeatedly and continuously.

28. Mr. Harris works the night shift and sleeps during the day.

29. World Financial placed its calls to Mr. Harris in the daytime hours.

30. The calls were disturbing, annoying and frustrating to Mr. Harris.

31. Mr. Harris suffered damages due to World Financial's telephone calls, including charges by his cell phone service.

### COUNT I – Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200 *et seq.*

32. Mr. Harris incorporates the preceding allegations by reference.

33. World Financial is a creditor and issues retail credit cards for numerous retail establishments. It uses the United States mail service, telephone, telegram or other instrumentalities of interstate and intrastate commerce in the course of its business operations.

34. At all times material and relevant hereto, World Financial used, controlled and/or operated "automatic telephone dialing systems" as defined by the Telephone Consumer Protection Act (" TCPA"), 47 U.S.C. § 227 (a)(1) and 47 C.F.R. 64.1200(f)(1).

35. Mr. Harris never gave World Financial permission to call his cell phone number.

36. Mr. Harris expressly told World Financial to stop calling him.

37. Defendant violated 47 U.S.C. § 227(b)(1)(A).

38. Defendant 's violations are multiple, wilful and intentional.

4

39.     Pursuant to the TCPA 47 U.S.C. § 227(b)(3)(B), Mr. Harris is entitled to statutory damages of $500.00 per violation.

40.     Pursuant to TCPA 47 U.S.C. §§ 227(b)(3), Mr. Harris is entitled to statutory damages of $1,500.00 per wilful or knowing violation.

## COUNT  II – Michigan Collection Practices Act

41.     Mr.  Harris incorporates the preceding allegations by reference.

42.     World Financial has engaged in violations of the Michigan Collection Practices Act ("MCPA"), *et seq.* including, but not limited to M.C.L. §445.251 (n) and (q).

43.     Mr. Harris has suffered damages as a result of these violations of the MCPA.

## Demand for Jury Trial

44.     Plaintiff demands trial by jury in this action.

## Demand For Judgment for Relief

45.     *Accordingly, Mr.  Harris requests that the Court grant:*

        a.      *Equitable relief under statute and common law, in the form of a declaration that the amount sought by Defendant is not actually owed and an injunction prohibiting further collection of those amounts.*

        b.       *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

        c.      *Statutory damages.*

        d.      *Treble damages.*

        e.      *Statutory costs and attorney fees.*

5

Respectfully Submitted,


By:  s/ Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Dan Harris
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: March 21, 2011