UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

DAN HARRIS
     Plaintiff

-vs-                          Case No. 10-14867
                              Hon. Sean F. Cox
                              Magistrate Judge: Mark Randon

WORLD FINANCIAL NETWORK
NATIONAL BANK
et al.
     Defendants

## MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND OVERRULE OBJECTIONS TO INTERROGATORIES

For the reasons set forth in the accompanying brief in support, Mr. Harris requests that the

Court overrule the objections to interrogatories submitted by World Financial Network National

Bank ("WFNNB") and compel complete, unqualified responsive answers to those interrogatories.

Respectfully Submitted,

By: s/ Julie A. Petrik
Julie A. Petrik (P-47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Dan Harris
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: April 3, 2011

### Certification of Counsel

I certify that I have attempted to obtain the requested discovery without court action in good

faith by conferring or attempting to confer with the attorney for WFNNB and the requested

discovery has not been provided.

Respectfully Submitted,


By:  s/ Julie A. Petrik
Julie A. Petrik (P-47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Dan Harris
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: April 3, 2011

## BRIEF IN SUPPORT OF
## MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND OVERRULE OBJECTIONS TO INTERROGATORIES

### Relief Sought

Dan Harris seeks an order overruling the improper, boilerplate objections to interrogatories tendered by the WFNNB and compelling complete and responsive answers to those interrogatories.

### Facts

On January 11, 2011, Mr. Harris served 16 interrogatories on WFNNB (Exhibit 2). Those interrogatories sought discovery of basic information relating to the claims and defenses in this case, as well as the identity of possible witnesses and defenses. WFNNB has failed to provide substantive responses and instead interposed boilerplate discovery responses which have deterred discovery in this case (Exhibit 3). Plaintiff's counsel has attempted in good faith to secure the information sought through the meet and confer process, without success [1]. Further, seeking to avoid the expense of time consuming discovery disputes, Plaintiff has continually expressed his desire to resolve the case by entering into settlement discussions[2]. Plaintiff brings this motion to overrule those objections and obtain the requested discovery.

### What is at Issue in this case and the Nature of the Requests

Mr. Harris's claims arise under the Telephone Communication Protection Act ("TCPA), an act designed to protect against unwarranted invasion of consumer privacy. It prohibits the placement of calls to cell phones with the use of auto-dialers and artificial or prerecorded voice technology

---

[1] WFNNB's counsel agreed to withdraw its objection that Plaintiff served in excess of 25 interrogatories.

[2] In spite of having repeatedly requesting a response to the settlement demand tendered by Mr. Harris on March 3, 2011, WFNBB has refused to respond with any offer to resolve the case. Mr. Harris has also requested that WFNNB participate in a settlement conference with Magistrate Judge Randon; Defendant has not accepted this offer.

without the consent of the called party.   47 U.S.C. § 227(b)(1)(A)(iii). Mr. Harris also has claims under the Michigan Collection Practices Act ("MCPA"), M.C.L. §445.251 *et seq.* for harassing, oppressive and abusive collection conduct.  He claims that WFNNB violated both the TCPA and MCPA s willfully and is thus entitled to triple damages and court costs and fees. 47 U.S.C. § 227(b)(3)(B) & (C);  M.C.L. §445.257.

 WFNNB placed over 55 calls to Mr. Harris in the span of less than two months; it placed no less than 8 calls on a single day.  Mr. Harris has no account with WFNNB, owes no money to WFNNB and never granted consent for it to call his cell phone number.  Mr. Harris told WFNNB on numerous occasions that it had the wrong number and it should stop calling. WFNNB continued to call despite  Mr. Harris's request that it leave him alone.

WFNNB has two primary defenses to the claims.  First, it maintains that it had the consent of a third party account holder  to call Mr. Harris' cell phone number (Docket 5, par. 10); second it claims any violation  was neither willful or intentional and that if it did violate the law, it was not intentional but the result of a *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid such errors (Docket 5, par. 4 & 5).  Accordingly, WFNNB has placed its own "state of mind" and procedures at issue, and  opened the door to discovery of these defenses.

Each of the following areas of inquiry was identified in Mr. Harris's interrogatories to assist in identifying information for introduction at trial to prove one of these essential elements of the case or meet WFNNB's defenses:

✓	The calls placed by WFNNB to Mr. Harris and the use of automated dialers and artificial and/or prerecorded voice technology in the placement of those calls;

✓	 Mr. Harris' notice to WFNNB that it should stop calling him;

✓	 Any alleged consent by a third party account holder to call Mr. Harris' cell phone

number;

✓     WFNNB's knowledge that it was calling the wrong number when it called Mr. Harris;

✓     WFNNB's policies and procedures for the placement of automated telephone calls and for the use of artificial or prerecorded voice in the collection of accounts;

✓     WFNNB's knowledge of its duties and obligations under the TCPA and the MCPA.

✓     Other Lawsuits.

WFNNB has prevented any meaningful discovery of the claims.  Its  objections did not delineate between discoverable and undiscoverable material and produced virtually no useful information. The objections tendered amounted to a boilerplate list of objections which were unsubstantiated by any affidavit, declaration, or adequate explanation of what was being withheld or why [3].

## **Law and Argument**

1.     **Defendant's general objection as to WFNNB defined – not associated with any specific interrogatory – is improper and must be overruled.**

Specific objections must be tied to a particular interrogatory or a class thereof and, therefore, general objections to an entire set of interrogatories are improper. *Josephs v. Harris Corp*., 677 F.2d 985, 991-992 (3d Cir.1982); *Woods v. Kornfeld*, 9 F.R.D. 196, 197 (M.D.Pa.1949). *American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 131 (E.D.Pa.,2006).  As explained by one court, these generalized objections leave the propounding party [as well as any court] to guess which objections

---

[3]  In a recent Western District of Michigan case under the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*., Magistrate Judge Scoville roundly rejected similar unsupported objections of undue burden which Defendant 's counsel tendered to justify its refusal to provide substantive responses to any of the Plaintiff's discovery. *Ryon v Regent Asset Management*, Case No. 10-961 (W.D. Mich.,  March 23, 2011) (Exhibit 4).  As in that case, Defendant has provided virtually no information and has asserted unsupported claims of undue burden.

may be applicable to which interrogatory. *Southern Illinois Laborers' and Employers Health and Welfare Fund v. Pfizer Inc.*, 2007 WL 4557100 (N.D.Ill.,2007.) at note 1.

WFNNB has tendered a generalized objection to the way Mr. Harris has defined "You" to mean WFNNB, the company, predecessors, subsidiaries, entities, employees, agents, contractors, among others. Yet it has failed to identify how the definition is objectionable as to any particular interrogatory. WFNNB is in exclusive possession of information about its corporate structure, operations and where the information requested in the interrogatories can be located. Yet while it objects that this definition is too broad, it has failed to identify as to any particular interrogatory how the definition renders the term meaningless. At the same time, it has acknowledged that WFNNB' parent company maintains offices and may possess relevant information. Without a tailored objection to individual interrogatory, WFNNB's freestanding objection is improper.

2.    **The requests propounded to WFNNB were reasonably calculated to lead to admissible evidence.**

In response to Interrogatories # 3, 5, 10, 13, 15, and 16, WFNNB has claimed that the information requested is not discoverable because it is not reasonably calculated to lead to admissible evidence. Under Fed.R.Civ.P. Rule 26, Mr. Harris may discover any materials that are not privileged if the materials requested are reasonably calculated to lead to admissible evidence. Rule 26 is very broad, permitting a wide range of inquiry at the pre-trial stage. If there is any possibility that the information sought may be relevant, the court should permit the discovery. *Hickman vs. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947). Further, "relevancy" as defined in Rule 26 is much broader than the concept of what might be relevant at trial. "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Biliske vs. American Live Stock Ins.. Co.*, 73 F. R. D. 124, 125 (W.D. OK. 1977). The Federal

Rules of Civil Procedure strongly favor full discovery whenever possible. A discussion of the types of information requested and the reasons why this information could lead to the discovery of admissible evidence follows.

> **a.      Plaintiffs is entitled to discover information concerning identity of witnesses, communications with the Plaintiffs, and facts underlying the complaint.**

In Interrogatory #3, Mr. Harris requested that WFNNB provide basic information describing communications between WFNNB and Mr. Harris and the underlying account holder, the dates and times and content of those communications, whether WFNNB used an autodialer to telephone him, the identity of individuals that communicated with him, and whether the communication involved WFNNB's artificial and/or prerecorded voice communications systems. The interrogatory required WFNNB to provide complete identification of these witnesses to the communications, including full name, last known address and phone number.

WFNNB tendered a baseless relevancy objection and provided absolutely no information in response to this interrogatory. The technological means by which WFNNB barraged Mr. Harris with calls and communicated its message, as well as the content of the communications between WFNNB and Mr. Harris lie at the heart of the complaint and is fundamentally discoverable. Further, WFNNB's primary defense in this case is that it had consent to call Mr. Harris. Thus, the information that Mr. Harris communicated to WFNNB via its individual employees is relevant as well as communications between WFNNB and the account holder.

WFNNB has barred access to its witnesses by failing to provide the names of those witnesses and their identifiers. The address and location of fact witnesses is fundamentally discoverable. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984) (In particular, we note that appellee had failed to take even the fundamental first step in discovery of requesting the names and addresses of the witnesses the appellants had already interviewed. The law is clear that such

information is subject to discovery."); *Afreedi v. Bennett*, 517 F.Supp.2d 521, n1 (D.Mass.,2007)(citing objection to interrogatory seeking witness address as meritless); *Magner v. Lynn*, 1992 WL 38140 (E.D.Pa.,1992).

The communications between the parties would be admissible against WFNNB.  As such, the identification of the persons who have information about the case and communications, as well as their location information  is absolutely discoverable.

### b.   Mr. Harris is entitled to discover information concerning electronically stored documents and the possible location and reliability of  ESI relevant to this case.

In Interrogatory #5, Plaintiff requests information concerning the computer systems which WFNNB used to store or produce the documents from electronically stored information, identify the system administrator and the person who retrieved the documents from the system.   WFNNB has objected that this information as not reasonably calculated to lead to admissible evidence.

At the heart of this case is whether WFNNB's communications to Mr. Harris were made via its autodialer and/or through the use of artificial or prerecorded voice technology and how it programmed these systems to collect its accounts.  This information lies in WFNNB's electronically stored records in its computer systems.  WFNNB has turned over some records originating from some of these systems but not any information relating to the software or hardware that was used to generate these documents. Its response was limited to its disclosure that systems were confidential and proprietary and that Andrea Dent retrieved the documents.  WFNNB provided no contact information or identifiers for Ms. Dent.

In order to test the records and sufficiency of WFNNB's production, Mr. Harris would need to identify the systems and its capabilities and question the system administrator.  Plaintiffs have no ability to test the completeness or accuracy of these records without knowing what systems were used to create, store and retrieve them. Further, since WFNNB is using a computer system that is

proprietary and inaccessible to the general public, there is all the more reason that it must identify the outlines of its system and the system administrator who is the keeper of the records as to the system. Absent that information, Mr. Harris has no way to test the completeness, authenticity, and accuracy of these records. The actual instructions of how a account is to be collected by either by automated processes or individual collectors is often coded and not included within disclosures. Plaintiff is entitled to know how these systems work, their functional capabilities, their reporting capabilities, how they were programed to operate, and the susceptibility of the records to alteration. This information cannot be accessed unless the systems and the software at issue are identified.

      **c.**    **<u>Mr. Harris is entitled to discover those documents which defendant would acknowledge as establishing the relevant standard of care, against which its defense may be tested, including its own manuals and other authoritative treatises.</u>**

      In Interrogatories 10, 15, and 16 Mr. Harris asked WFNNB to identify those materials that its managers possessed to establish TCPA and MCPA compliance and the business rules that WFNNB uses to program its autodialing system. WFNNB objected on the grounds that this interrogatory was not reasonably calculated to lead to admissible evidence. WFNNB's objection lacks merit.

      There are three key factual issues which the answer to this interrogatory would address. First is the liability issue under the MCPA for harassing, oppressive and abusive conduct. To the extent that WFNNB has any standards or is aware of legal authority relating to the frequency and volume of collection calls, the 55 calls placed by the Defendant to Mr. Harris can be measured against those standards and authority. Second is the issue of treble damages and costs and attorney fees. Under the TCPA and the MCPA, a plaintiff may recover up to triple statutory damages for willful conduct and costs and attorney fees under the MCPA. 47 U.S.C. § 227(b)(3)(B) & (C); M.C.L. §445.257. WFNNB's compliance manuals and other compliance publications will reveal whether WFNBB

had knowledge of its duties under the relevant Acts, had sufficient procedures in place and or violated the Acts wilfully or knowingly. The presence of compliance materials, the specific content of those materials, and whether those materials were relied upon by WFNNB through its management would all bear on these issues which are directly at issue for purposes of the statutory damage claim.   Additionally, the business rules that WFNNB used to program its autodialing campaign will bear on whether WFNNB acted wilfully. (See,   *Segenberger v Credit Control Services,* Case No. 09-c-2796, (N.D. Ill. May 5 , 2010) at 6; willful means the conscious or deliberate commission or omission of an act.)  Thus, how WFNNB programmed its system to call Mr. Harris and others bears on whether it acted willfully.

Third, WFNNB asserts a *bona fide* error defense that erred despite the maintenance of procedures designed to avoid such errors.   WFNNB has directly placed its own procedures at issue and thus may not to simultaneously withhold them and claim they are not relevant.

### d.   Mr. Harris is entitled to discover information about other lawsuits and settlements

Interrogatory 13 requests WFNNB to identify other lawsuits against WFNNB for acts similar to those in Mr. Harris' case and information about settlements of those cases.  WFNBB's prior conduct is relevant to showing whether its violations were intentional, willful and/or knowing. First, if WFNNB has been sued for or settled other claims under the TCPA and/or the MCPA,  that information might constitute notice to WFNNB that its compliance procedures were inadequate. As such, these suits or settlements would be admissible to disprove that the defense was the result of a "good faith" error and whether the procedures were reasonable.  Similarly, such suits might undercut claims that the violations were "good faith" errors, and are instead a pattern or method of collecting accounts.  At the same time, other lawsuits would bear on the frequency of violations which are an important factor in determination of treble damages which requires that the court

consider whether WFNNB acted wilfully or knowingly.

Second, the fact that WFNNB has been sued and settled such claims before may demonstrate that prior damage awards failed to cause a change in conduct, thus allowing a reasonable jury to infer a profit motive for WFNNB's actions [i.e.] it is more profitable to violate the law and pay damages than comply and not collect money.  Such a motivation would be relevant and admissible. As such, other lawsuits could yield evidence that is admissible and relevant to these key facts at issue in this case.  *Kimbro v. I.C. System, Inc.*, 2002 WL 1816820, *3 (D.Conn. 2002). See for example, *Cameron v. City of Philadelphia*, 1990 WL 151770 (E.D. Pa. Oct. 4, 1990);*Renshaw v. Ravert*, 82 F.R.D. 361 (E.D.Pa.1979).

**3.**     **Plaintiff's discovery requests are permissible under the discovery exception to GLB.**

Interrogatory 3, 6, 7 & 8 seek a description of communications by WFNNB to the Plaintiff and the underlying account holder, the  witnesses WFNNB will rely on to establish consent to call Mr. Harris's cell phone,  his or her identifying information[4], and WFNNB's source of all contact information relating to Plaintiff.  WFNNB claims that it need not provide discovery on these items as it is confidential consumer financial information relating to a non-party  presumably, based on the Gramm-Leach-Bliley Act ("GLB") 15 U.S.C. 6802 *et seq.*

WFNNB's principal defense is that it obtained consent to call Mr. Harris. Yet it  withholds the very information that would allow Mr. Harris to test its defense under the auspices of the GLB, specifically, the name of the person who allegedly provided consent, how such consent was communicated and communications with that person.

The majority of courts that have considered the issue have found that GLB "permits a

_____

[4] Including name, last known address and phone number among other identifiers.  This information is sought so that the Plaintiff may locate, subpoena and depose witnesses with discoverable information.

financial institution to disclose the non-public personal financial information of its customers to comply with a discovery request." *Marks v. Global Mortgage Group, Inc*., 218 F.R.D. 492, 496 (S.D. W.V. 2003).  Accord *Hopkins v. Kansas Teachers Community Credit Union*, No. 08-CV-5052, 2009 U.S. Dist. LEXIS 71250 at *2 (W.D. Mo. Aug. 12, 2009) ("the Gramm-Leach-Bliley Act at 15 U.S.C. 6802(e)(8) expressly allows [the subpoenaed third party] to provide the requested information"); *In re Insurance Premium Local Tax Litigation*, No. 06-CV-141, 2008 U.S. Dist. LEXIS 14516 at *27 (E.D. Ky. Feb. 25, 2008) (applying the Act's exceptions for civil discovery "based on the near-universal reasoning of other courts"); *Her v. Regions Financial Corporation*, No. 2:07-CV-2017, 2007 U.S. Dist. LEXIS 71736 at 4 (W.D. Ark. Sept. 25, 2007) ("section 6802(e)(8) does permit the disclosure"); *Barkley v Olympia Mortgage Company*, No. 04-CV-875, 2007 U.S. Dist. LEXIS 13308 at *59-60 (E.D. N.Y. Feb. 27, 2007) ("the Gramm-Leach-Bliley Act provides for an exception allowing disclosure of nonpublic personal information 'to respond to judicial process'"); *Capital One Services, Inc. v. Page*, 942 So.2d 760, 765 (Miss. 2006) (the Act does not prohibit discovery of personal identifying information for other customers of financial institution); *Martino v. Barnett*, 595 S.E.2d 65, 72 (W. Va. 2004) (concluding the Act allows "the use of any judicial process expressly authorized by statute or court rule, whether by way of discovery or for any other purpose expressly authorized by law, to obtain information relevant to the proceedings to which the judicial process related from an insurance company that would otherwise fall within in the privacy protections of the Act").

In this case, the GLB does not protect the information at issue.  Mr. Harris must have access to all requested information about communications between WFNNB and the underlying account holder.  This  may reveal information about what contact information the account holder provided WFNNB, whether that person provided  updated contact information, whether WFNNB contacted

that the account holder at a different number,  all information related to whether WFNNB had a legitimate belief that it had consent to call Mr. Harris's cell phone.  The courts have recognized that absent the discovery exception to the GLB,  litigation would grind to a halt.  Importantly,  WFNNB may not simultaneously assert the defense of "consent" and at the same time withhold the very evidence that would allow Mr. Harris to test that defense.

4.     **Defendant Must Produce Materials Which Are Improperly Withheld as "Confidential".**

WFNNB has additionally objected to responding Interrogatory 10 and 13 on the basis of "confidentiality."   Rule 26 of the Federal Rules of Civil Procedure permits courts to issue a protective order, if justice requires and to protect individuals from "annoyance, embarrassment, oppression, or undue burden or expense" Fed. R. Civ. P. 26(c). The burden of establishing good cause for a protective order rests with the moving party. *See*, *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To show good cause, a moving party for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987) (citations omitted).

There is no absolute privilege for trade secrets or similar confidential information. *Federal Open Market Comm. of Federal Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 61 L. Ed. 2d 587, 99 S. Ct. 2800 (1979); *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir.1981). Many cases have recognized that the public has a "common-law right of access" to judicial records. E.g., *Nixon v. Warner Comm., Inc*., 435 U.S. at 59799; *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.*), 21 F.3d 24, 26 (2d Cir. 1994) (identifying "strong presumption of public access to court records").   Accordingly, the party asserting a privilege and resisting discovery has the burden of establishing the existence of the

privilege. Fed. R. Civ. P. 26(b)(5); *Duffy v. Dier*, 465 F.2d 416, 418 (8th Cir. 1972); *National Union Fire Insurance Company of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D.Kan.1994). The moving party must also make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981).

WFNNB has withheld identifying its TCPA and MCPA compliance manuals and software manuals and information about settlements of TCPA and MCPA lawsuits on grounds of confidentiality. At the same time it has not offered any evidence that the settlements are confidential by means of a declaration or affidavit, nor has it even claimed that it will suffer a clearly defined and serious injury. It certainly not made the requisite showing under Rule 26 that it has good cause for protection. In light of the strong common law right of public access and WFNNB's utter lack of showing of any harm in production, WFNNB's objections should be overruled.

**5.   WFNNB's responses which refer to incomprehensible business records must be compelled.**

In Interrogatory 6, Mr. Harris  requests that Defendant provide a complete description of items in its collection log which are coded or transcribed. The collection log produced by WFNNB is thick with coding and is indecipherable. The following excerpt is representative of the log:

| Date | Time | User ID | CCH |
|------|------|---------|-----|
| 01/07/11 | 13:26 | SYSTEM | NC |
| 01/07/11 | 13:26 | l577520 | |
| 01/04/11 | 13:18 | AUTODIAL | OAH3 |
| 01/04/11 | 09:56 | AUTODIAL | OAH5 |

Exhibit 5

Yet, instead of providing a responsive answer, WFNNB explicitly referred Plaintiff back to the same collection log at issue in the interrogatory, claiming that the information sought can be ascertained from the documents produced herein. WFNNB's reference to business records in this instance must

be considered unresponsive for purposes of the discovery rules.

While it is clear that Rule 33 permits a party to incorporate business records into a response, such incorporation by reference is only if the burden of deriving or ascertaining the answer will be substantially the same for either party.  Fed.R.Civ.P. 33(d).  *Mooney v. City of Dearborn*, 2008 WL 4539513 (E.D. Mich.,2008).

Importantly, when the documents provided are coded or otherwise indecipherable, the provisions of such documents does not meet the requirements of Rule 33(d).

> Additionally, a responding party cannot "foist a mass of records on his interrogator when their deciphering is feasible only for one familiar with the records." *Compagnie Francaise*, 105 F.R.D. at 44. Even the production of a small number of documents can create an unequal burden when the contents of the documents are not clear to the interrogating party. See, e.g., *Secs. & Exch. Comm'n v. Tellco Info. Servs.*, No. 79 Civ. 6649, 1981 U.S. Dist. LEXIS 15268, at *6 (S.D.N.Y. Oct. 16, 1981)

*Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 148 (E.D.N.Y.,2008).  As held here, providing coded documents for which only the responding party has the key is not sufficient and does not comply with the requirements of Rule 33.

In this case, referring Mr. Harris back to its own heavily coded collection log in response to a request to de-code it, is unresponsive and does not meet the requirements of Rule 33. For these reasons, the Court should find that the response to Interrogatories 6 is  unresponsive and compel a complete and  truthful response.

**6.    Defendant has provided unresponsive answers to key interrogatories which are relevant to this case.**

In Interrogatory 3 Mr. Harris requests that WFNNB describe all communications to and from WFNNB to Mr. Harris' cell phone *and to any person concerning any account "associated with the Plaintiff."*  WFNNB evaded this question by saying it did not have an account for Plaintiff and thus refused to detail information about its calls to the underlying account holder or others, even though

WFNNB clearly had associated Mr. Harris's cell phone number with the account.

In Interrogatory 14, Mr. Harris seeks the identity of third party contractors who provided communications services relating to calls to Plaintiff including autodialing and artificial and prerecorded voice communication services.  WFNNB ducked its response by saying, "WFNNB's communications were not directed at Plaintiff."

As  Interrogatory 12, WFNNB objected to providing a list of the documents it withheld as confidential on grounds that discovery had just commenced.

An "evasive or incomplete" answer is treated as a failure to answer when determining whether the discovering party is permitted compel further response. *Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C.,2007);  Fed.R.Civ.P. 37.  Discovery requests must be given reasonable construction:

> National Fire also objected to Interrogatory No. 15 as vague and ambiguous based on the phrase "construction defect." Even if I were inclined to accept that argument, it would not excuse Defendant's failure to provide any substantive response. Cf. *Stoldt v. Centurion Indus. Inc*., 2005 WL 375667, *2 (D.Kan.2005) ("[a] party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories"); *King-Hardy v. Bloomfield Board of Education*, 2002 WL 32506294, *5 (D.Conn.2002) (holding that discovery requests must be given a reasonable construction, rather than straining to find ambiguity where there is none); *Adolph Coors Co. v. American Insurance Co.*, 164 F.R.D. 507, 518 (D.Colo.1993) (expressing the view that in responding to discovery requests, a responding party is "obligated" "to put the collective heads of its lawyers and agents together, ... to give those requests a reasonable construction").

*Greystone Const., Inc. v. National Fire & Marine Ins. Co.*,  2008 WL 795815 (D.Colo.,2008)

See also,  *Martin v. Easton Publ'g. Co.*, 85 F.R.D. 312, 315 (D.C.Pa.1980) (affirming the motion to compel and stating that plaintiff "cannot escape her responsibility of providing direct, complete, and honest answers" and that defendants were "entitled to know the factual content of plaintiff's claims with a reasonable degree of precision " (emphasis added)).   Interrogatory answers are due

30 days after service.  F.R. Civ. P. 33(b)(2).

WFNNB's answers are clearly designed to hide the ball and prevent Mr. Harris from discovering information necessary to support his claims.  Interrogatory 3 seeks information about all communications to any person concerning any account associated with the Plaintiff.  WFNNB associated Mr. Harris with the account by placing 55 calls to him to collect the account.  WFNNB's attempt to evade answering the question by word play and splitting hairs must by rejected.  Similarly, WFNNB's response to Interrogatory 14 that it does not have an account for Plaintiff is unresponsive to the question of whether WFNNB used a third party vendor to place the calls and if so, to identify that contractor.

WFNNB's objection to Interrogatory 12 that discovery has just commenced is false and completely outside the rules.   By agreement between the parties to open  discovery, Mr. Harris's interrogatories were served on January 11.  Answers are due to interrogatories 30 days after service, R 33(b)(2), in this case the date was February 10.   WFNNB's failure to answer more than two months after service is simply an outrageous attempt to avoid its duty to provide information.

**7.**     **WFNNB has failed to identify persons with knowledge of the facts, identify those facts and the  foundation for witnesses' knowledge.**

In Interrogatory 2, WFNNB is to provide information about its witnesses, including whether the person has personal knowledge of communications with Mr. Harris, such as its account representatives that received Mr. Harris's calls,  the foundation of that knowledge, and the facts. Interrogatory 11 requests that as to those people identified, WFNNB provide information about lawsuits in which that person has offered trial or deposition testimony.   WFNNB's responded that that it has not made Rule 26 disclosures and thus it did not even attempt to answer the substance of the question.  More problematic, where WFNNB provided a response, that response was incomplete and evasive.

Parties are required to provide information about witnesses and their identification.

*Lucas v. GC Services L.P.*, 226 F.R.D. 328 (N.D.Ind.,2004)(Defendant barred from introducing witnesses beyond those identified and compelled to produce complete identification). A party to whom an interrogatory is propounded "must provide true, explicit, responsive, complete, and candid answers." *Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C.2007) (Lamberth, J.) (quoting Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D.Pa.1996)). WFNNB's incomplete responses to Interrogatory 3 and 11, are not in compliance with this rule. WFNNB identified one person[5] in its responses to the interrogatories, Andrea Dent. Yet it failed to provide any of her contact information or identifiers[6] and failed to respond to the heart of interrogatory 3, specifically, to describe the foundation of her knowledge, and the facts about which she has knowledge. It further failed to answer interrogatory 11 and identify whether Andrea Dent or any other individuals with knowledge have offered trial or deposition testimony. Accordingly, this Court should order WFNNB to completely respond to these interrogatories.

**8.**     **Plaintiff's discovery requests identify with reasonable specificity the information sought by the interrogatory and are not "vague" for purposes of the rules.**

**Objection Asserted to**
**Interrogatories # 3, 5, 10, 15 & 16**

WFNNB has tendered a boilerplate objection to interrogatories as being "vague and ambiguous." It claims it does not understand the meaning of the following terms: Interrogatory 3: "associated with"; Interrogatory 5 "computer hardware and software"; Interrogatory 10 "software systems", "account collection efforts", "autodialing software" ; Interrogatory 15 "managers" :

---

[5] Due to its other unfounded objections, WFNNB has withheld the names of all persons with knowledge of the facts, claims and defenses, but one. The one disclosure is to Andrea Dent, presumable, corporate counsel to WFNNB, arguably not a fact witness at all.

[6] WFNNB described her as co-counsel but Ms. Dent has not corresponded with Plaintiff nor entered an appearance.

Interrogatory 16 "business rules."

These are straight forward terms, readily understandable and facially proper. As such, the issue is whether this "boilerplate" objection is sufficient to relieve WFNNB from its obligation to respond to the interrogatories. Under applicable case law, these objections are insufficient.

General objections to interrogatories on grounds of vagueness are not proper. *Liquidometer Corp. v. Capital Airlines, Inc.*, 24 F.R.D. 319 (D.C. Del.1959). Objections should be sufficiently specific to allow the court to understand the request is deficient. *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996); see also *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996).

> No particular form for interrogatories is mandated by the Federal Rules. Fed.R.Civ.P. 33. Thus, a party has substantial latitude in drafting interrogatories. Still, interrogatories must be sufficiently definite, clear, and concise, and they must adequately advise the interrogated party of the information requested. *Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D.Ohio 1989). An interrogatory is definite "so long as it is clear what it is the interrogated party is called on to answer." *Struthers Scientific & Int'l Corp. v. General Foods Corp.*, 45 F.R.D. 375, 379 (S.D.Tex.1968). "The inquiries need not be phrased in terms of technical precision." Id.

*Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486 (W.D.N.C.,1998).

At the same time, the Court should not sustain unsupported, boilerplate objections. *McLeod, Alexander, Powel & Apffel, P.C v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests are overly broad, burdensome, oppressive, and irrelevant are insufficient to meet objecting party's burden of explaining why discovery requests are objectionable).

In responding to discovery requests, a responding party is "obligated" "to put the collective heads of its lawyers and agents together to give those requests a reasonable construction. *Adolph Coors Co. v. American Insurance Co.*, 164 F.R.D. 507, 518 (D.Colo.1993). In so doing, that party should exercise reason and common sense to attribute ordinary definitions to terms and phrases

utilized in interrogatories. *Stoldt v. Centurion Indus. Inc.*, 2005 WL 375667, *2 (D.Kan.2005). More importantly, even if a party finds the interrogatory objectionable in some part, that party must proceed to provide the information that is not objectionable. *Doe v. National Hemophilia Foundation,* 194 F.R.D. 516 (D.Md.,2000). Therefore, a boilerplate interrogatory objection that fails to provide unobjectionable information, does not comply with the rules.

In this case, all of the terms used by Mr. Harris are straightforward and are readily understandable within the context. WFNNB has failed to identify any infirmity with the interrogatories in question or identity how that infirmity could influence their answer to the interrogatory. More importantly, WFNNB has failed to provide any relevant information which could be any use, and simply refuses to respond substantively and completely. Simply put, WFNNB has made no effort to provide either Mr. Harris or this Court with any reason for the refusal to provide a response. As stated these objections are improper and insufficient. The Court should overrule these objections and enter an order compelling responsive answers.

9.     **There Has Been No Showing of Undue Burden in Producing the Requested Information**

   **Objection Asserted to**
   **Interrogatories # 3, 10, 12, 13, 15, & 16**

WFNNB has objected to six interrogatories with the boilerplate objection that the request is unduly burdensome to produce, overly broad and that the requests are "harassing or oppressive" or part of the public record. WFNNB did not produce any information concerning the nature or extent of the claimed burden, nor did produce any affidavit or declaration establishing the burden. More importantly, WFNNB did not provide any of the information which would *not* have been burdensome to produce[7].

---

   [7] It additionally claims the requests are harassing, oppressive and costly (10 & 15) without any supporting evidence, declarations or affidavits.

Where there is a claim that the discovery sought is overburdening, the party making the claim must articulate with specificity the nature and costs associated with the claimed burden and why these are alleged to outweigh the goal of liberal discovery. *Marena v. Carrabba's Italian Grill*, 196 .R.D. 35 (Md. 2000). The mere statement by a party that a discovery request is burdensome is not adequate to voice a successful objection to discovery. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982). The "mere" fact that discovery requires work and may be time consuming is not sufficient to establish undue burden. *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991).

The duty of establishing the propriety of an objection based on a claim that the request is unduly burdensome is on the objecting party. *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (Kan. 1991). The objection must show with specificity how the discovery request is overly broad, burdensome, or oppressive and submit affidavits in support or offer evidence which reveals the nature of the burden. *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42-43* (S.D.N.Y. 1984).

> Stating that the interrogator has the information requested is insufficient to meet that burden:
>
> "The fact that the information sought is already known to the interrogator is not a valid ground for objection to the interrogatories. Interrogatories are not limited to facts which are exclusively or peculiarly within the knowledge of the interrogated party. The fact that the information sought is equally available to the interrogator, or is a matter of public record, does not render the interrogatories objectionable." Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D.W.V.1970) (quoting 2A Barron & Holtzoff, Federal Practice and Procedure § 766 (1961)).

*Susko v. City of Weirton*,  2010 WL 1881933 (N.D.W.Va.,2010). Similarly, the mere fact that information may be available to the public does not relieve a party from producing the sought information. *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 615 (N.D.Ill.2001).

Mr. Harris has requested that WFNNB describe the communications between WFNNB and

the Plaintiff and the underlying account holder (Interrogatory 3): identify its TCPA/MCPA compliance and software manuals (Interrogatory 10) and other compliance materials (Interrogatory 15); the documents it has withheld on the basis of confidentiality (Interrogatory 12); TCPA/MCPA settlements (Interrogatory13); and the business rules it used to program its autodialing system(Interrogatory 16).    WFNNB refused to provide *any* responsive information to these requests. At the same time,  WFNNB has failed to support its objection with any evidence or information upon establishing an undue burden by which the Court could sustain the objection. Rather, WFNNB has simply  tendered a boilerplate objection without any support.  This failure is fatal to WFNNB's improper objections.  Accordingly, the Court should overrule these objections and order responses to the interrogatories.

10.     **WFNNB Network National Bank has failed to properly sign and verify its answers to interrogatories.**

Rule 33 requires that the person who makes the answer to the interrogatories must sign the answers attesting to the accuracy of the answers. F.R.Civ.P. 33(b)(5).    *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 529 (S.D.W.Va.,2007).  By failing to sign its answers, WFNNB avoids any accountability for the accuracy of its answers , a state this rule was designed to prevent.  Its failure to sign must be considered a blatant refusal to engage in discovery and all its answers must be considered  deficient.

### Conclusion

For the reasons set forth above, Mr. Harris requests that this Honorable Court overrule the objections to the interrogatories and compel complete responses to those interrogatories.

Respectfully Submitted,


By:  s/ Julie A. Petrik
Julie A. Petrik (P-47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Dan Harris
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: April 3, 2011

## Certificate of Service

I hereby certify that on April 3, 2011, I served this document on the following parties:

| Party | Manner Served |
| --- | --- |
| Charity Olson<br>Olson Law Group<br>106 E. Liberty, Suite 206<br>Ann Arbor, MI  48104 | Electronically via the CM/ECF System |

Respectfully Submitted,


By:  s/ Julie A. Petrik
Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Dan Harris
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: April 3, 2011