UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION


DANIEL D. HARRIS,

     Plaintiff,                          Case No.: 2:10-cv-14867
                                      District Judge Sean F. Cox
v.                                   Magistrate Judge Mark A. Randon

WORLD FINANCIAL NETWORK
NATIONAL BANK, ALLIANCE DATA
SYSTEMS CORP., ALLIED DATA
SYSTEMS,

     Defendants.

---

| | |
|---|---|
| JULIE A. PETRIK (P47131) | CHARITY A. OLSON (P68295) |
| Lyngklip & Associates | Olson Law Group |
| Consumer Law Center, PLC | Attorneys for WFNNB and ADSC |
| Attorneys for Plaintiff | 106 E. Liberty, Suite 303 |
| 24500 Northwestern Highway, Suite 206 | Ann Arbor, MI 48104 |
| Southfield, MI 48075 | Tel: 734-222-5179 |
| Tel: 248-208-8864 | Fax: 866-941-8712 |
| juliepetrik@att.net | colson@olsonlawpc.com |

---

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*American Telecom Co., LLC v. Republic of Lebanon,*
   501 F.3d 534, 539 (6th Cir. 2007)……………………………………………………………

*Andersen v. AFNI, Inc.,*
   2011 WL 1808779 (E.D. Pa. 2011)………………………………………………………….

*Arbaugh v. Y&H Corp.,*
   546 U.S. 500, 506-07 (2006)……………………………………………………………...

*Cellco P'ship v. Dealers Warranty, LLC,*
   2010 WL 3946713 (D.N.J. October 5, 2010)……………………………………………..

*Chevron USA Inc v. NRDC,*
   467 US 837, 843 (1984)…………………………………………………………………...

*Clarke v. Mindis Metals, Inc.,*
   No. 95-5517, 99 F.3d 1138, 1996 WL 616677, *3 (6th Cir. Oct. 24, 1996)……………………

*CMS North America, Inc. v. DeLorenzo Marble & Tile, Inc.,*
   521 F.Supp.2d 619, (W.D. Mich. 2007)…………………………………………………..

*Cmty. First Bank v. NCUA,*
   41 F.3d 1050, 1053 (6th Cir. 1994)……………………………………………………..

*Coal Operators & Assocs., Inc. v. Babbitt,*
   291 F.3d 912, 915-916 (6th Cir. 2002)…………………………………………………….

*Fillichio v. M.R.S. Assocs.,*
   No. 09-61629-CIV, 2010 WL 4261442 (S.D. Fla. Oct. 19, 2010)…………………………..

*Franzel v. Kerr Mfg. Co.,*
   959 F.2d 628, 630 (6th Cir. 1992)……………………………………………………....

*Friends of the Earth Inc. v. Laidlaw Envtl. Servs.,*
   528 U.S. 167, 180-81 (2000)……………………………………………………………...

*J2 Global Communications, Inc. v. Blue Jay, Inc.,et al.,*
   2009 U.S. Dist. LEXIS 111609 (N.D. Cal. Aug. 4, 2009)………………………………….

*Kontrick v. Ryan,*
   540 U.S. 443, 455 (2004), cert. denied,-U.S.-, 128 S.Ct. 1472 (2008)………………………

*Kopff v. World Research Group, LLC,*
    568 F.Supp.2d 39,40-42 (D.D.C. 2008)……………………………………………………...

*Leyse v. Bank of America, National Association,*
    2010 WL 2382400 (S.D.N.Y. June 14, 2010)………………………………………………….

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560-61 (1992)………………………………………………………………...

*Satterfield v. Simon & Schuster,*
    569 F.3d 946 (9th Cir. 2009)………………………………………………………………

*D.G. ex rel. Tang v. William w. Siegel & Associates, Attorneys at Law,*
    F.Supp.2d, *2; 2011 WL 2356390 (N.D. Ill., 2011)……………………………………………

*U.S. v. Cotton,*
    535 U.S. 625, 630 (2002)……………………………………………………………………

*Valley Forge Christian Coll. v. Ams. United for Seperation of Church & State, Inc.,*
    454 U.S. 464, 474-75 (1982)………………………………………………………………...

## Statutes

47 U.S.C. §227…………………………………………………………………………………..

47 U.S.C. §227 (a)(i)……………………………………………………………………………….

47 U.S.C. § 227(b)(1)(A)…………………………………………………………………………..

47 U.S.C. § 227(b)(2)(C)…………………………………………………………………………..

## Court Rules

Fed. R. Civ. P. 12 (b)(1)……………………………………………………………………………

Fed. R. Civ. P. 12 (b)(6)……………………………………………………………………………

Fed. R. Civ. P. 12 (h)(3)……………………………………………………………………………

Fed. R. Civ. P. 56………………………………………………………………………………...

## Other Authorities

*Declaratory Ruling in re Rules and Regulations Implementing the*
*Telephone Consumer Protection Act of 1991,*
FCC 07-232 (Dec. 28, 2007; released Jan. 4, 2008)……………………………………………...

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, (1992)………………………………………………………………………………………

## STATEMENT OF ISSUES PRESENTED

I.   Should the court dismiss Plaintiff's TCPA claims because he lacks standings to assert claims against Defendants under 47 U.S.C. § 227 (b)(1)(A)?

      Defendants say: Yes

II.  Did Defendants have prior express consent to contact the called party, Leann Morgan, thereby precluding entry of judgment in Plaintiff's favor?

      Defendants say: Yes

III. Assuming *arguendo* that Defendants' actions violated the TCPA, as alleged, is the record devoid of evidence to support a finding of "willfulness" for purposes of awarding treble damages?

      Defendants say: Yes

# I.   BACKGROUND

This case arises from Defendants' lawful efforts to contact an existing credit card holder using a telephone number provided by the card holder to WFNNB in conjunction with the origination of three (3) retail credit card accounts and highlights the lengths that a party and/or his counsel will go to manufacture a legal claim.

The account origination documentation for each of the 3 accounts confirms that the cardholder, Leann Morgan ('Morgan"), provided WFNNB[1] with a contact number of (810) 610-1233 at the time each of the accounts were opened.  When the 3 accounts fell past due, Alliance, relying on the Morgan's express prior consent to use the (810) 610-1233 number to contact her regarding the accounts, placed a series of readily identifiable phone calls to Morgan using the (810) 610-1233 number.  Alliance was subsequently informed, however, that the number should not be used to contact the cardholder in the future.  Consistent with its own policies and procedures, Alliance immediately removed the (810) 610-1233 number from each of the underlying accounts upon receiving such information, never again using the (810) 610-1233 number to contact Morgan regarding the respective accounts, thereafter.

Try as Plaintiff's may to gloss over these details, the account documentation and the testimony of the parties conclusively establishes these facts to be truth.  Nevertheless, Plaintiff hopes that the common and relatively unremarkable experience of receiving a series of phone calls properly intended for someone else and which could not be reasonably prevented warrants recovery of a substantial and unearned financial windfall not contemplated by Congress when it passed the TCPA.

---

[1]  The credit cards are issued by WFNNB and serviced by Alliance Data Systems, Inc. ("Alliance")

To be sure, there is not a shred of evidence to establish that the Bank's contact with Plaintiff was intentional, much less willful. This is also not a situation where Defendants repeatedly dialed a random phone number and/or submitted a wrong phone number to their auto dialer through their own error(s) or omission(s). Indeed, as Plaintiff must concede, the sole purpose for the calls at issue was at all times to discuss the status of the 3 accounts with the called party (i.e. the actual cardholder).

For all of the reasons that follow, the Court should deny Plaintiff's Motion for Partial Summary Judgment and enter Judgment in favor of Defendants on Plaintiff's TCPA claims.

## II. COUNTER STATEMENT OF FACTS

Defendants have contemporaneously filed and adopt herein a Counter Statement of Material Facts In Opposition to Plaintiff's Motion for Partial Summary Judgment as required in this Court's Scheduling Order.

## III. LAW AND ARGUMENT

### A. Plaintiff Lacks Standing to Bring a Claim Under the 47 U.S.C. § 227 (b)(1)(A) of the TCPA

There can be no dispute that subject matter jurisdiction is a necessary prerequisite to the exercise of federal judicial power. *Franzel v. Kerr Mfg. Co.*, 959 F. 2d 628, 630 (6th Cir. 1992). A federal district court has both the right and the affirmative obligation to independently determine whether the court has jurisdiction, even without a motion or request from a party:

> The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), *may be raised* by a party, or *by a court on its own initiative*, *at any stage of the litigation...* . Rule 12(h)(3) instructs: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction, the court shall dismiss the action." *American Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 539 (6th Cir. 2007) (footnote omitted) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004))), *cert. denied*, – U.S. –, 128 S.Ct. 1472 (2008).

The Sixth Circuit has gone even further, holding that "it is axiomatic that we *must* raise issues of subject matter jurisdiction *sua sponte*." *Clarke v. Mindis Metals, Inc.*, No. 95-5517, 99 F.3d 1138, 1996 WL 616677, *3 (6th Cir. Oct. 24, 1996) (emphasis added) (citing *Cmty. First Bank v. NCUA*, 41 F.3d 1050, 1053 (6th Cir. 1994)). *see, e.g., CMS North America, Inc. v. DeLorenzo Marble & Tile, Inc.*, 521 F. Supp.2d 619, (W.D. Mich. 2007) (Maloney, J.) ("[E]ven if CMS had never filed a motion for remand, this court would have had the right and obligation to ascertain whether it had subject-matter jurisdiction.").  Because lack of subject matter jurisdiction is a defense that can never be waived or forfeited, it is essential that the district court satisfy itself at every stage in the litigation that continued adjudication is proper.  *U.S. v. Cotton*, 535 U.S. 625, 630 (2002).   In the absence of subject matter jurisdiction, the court must dismiss the claim(s) at issue.

The doctrine of standing incorporates both a constitutional element and a non-constitutional, prudential element. "[T]o satisfy Article III's constitutional standing requirements, a plaintiff must show: (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992)).

Beyond these constitutional standing requirements, a plaintiff must also satisfy three prudential standing restrictions.  *See Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 915-916 (6th Cir. 2002.  To establish prudential standing, a plaintiff must similarly "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests

of third parties." *Id*.  Second, the claim at issue must be more than a "generalized grievance" pervasively shared by a large class of citizens.  *Coal Operators,* 291 F.3d at 916 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 474-75 (1982)).  Lastlty, in statutory cases such as this one, the plaintiff's claim must fall within the "zone of interests" regulated by the statute at issue. *Id*.  If Plaintiff cannot satisfy these requirements, prudential considerations necessarily preclude court from entertaining adjudication of such claims.

To determine whether Plaintiff's present claim falls within the TCPA's requisite "zone of interests," the Court must look to the text of the statute, itself, and then, if ambiguous, to other indicia of congressional intent such as the legislative history. Although 47 U.S.C. §227(b)(3) ostensibly permits any "person or entity" to bring suit under the Act, the language of 47 U.S.C. 227(b)(1)(A)(iii) – the actual section under which Plaintiff seeks relief – expressly and unambiguously limits relief under that section to the "called party."  While Plaintiff argues that the term "called party," as used throughout the Act, can only mean persons who pay for the phone service (the "subscriber") and/or receive calls (the "recipient"), such a reading ignores the preceding language of the sentence which specifically exempts calls made "with the prior express consent of the called party," from liability under §227(b)(1)(A).

Indeed, to permit *any* person to bring a claim under 227(b)(1)(A) despite the express limitations set forth in this particular section of the statute would, as other courts have concluded, render the prior express consent exception a legal "nullity." *Cellco P'ship v. Dealers Warranty, LLC,* 2010 WL 3946713 (D.N.J. October 5, 2010)(concluding that the only logical interpretation of the language used in 227(b)(1)(A)(iii) is one which would require the party to whom the call was directed to assert the underlying cause of action); *Leyse v. Bank of America, National*

9

*Association,* 2010 WL 2382400 (S.D.N.Y. June 14, 2010). The *Leyse* court, in rejecting the broad grant of statutory standing that Plaintiff invites the Court to make here, articulated the precise legal mischief that would arise if Plaintiff's interpretation of the TCPA was followed, i.e., businesses would face unlimited liability for calls directed to an appropriate "called party" but intercepted by another recipient, thereafter. See, also, *Kopff v. World Research Group, LLC,* 568 F. Supp. 2d 39, 40-42 (D.D.C. 2008).

Simply put, the Court cannot give effect to the statute as a whole while simultaneously ignoring these plain language of §227(b)(1)(A). If the legislature is presumed to "say in a statute what it means and mean in a statute what it says," a familiar canon of statutory interpretation, the court must give effect to the limiting language of this provision. Satterfield *v. Simon & Schuster,*569 F.3d 946 (9th Cir. 2009) (citations omitted).

Stated another way, if Congress had truly intended to provide broad and unfettered standing to any aggrieved party, as Plaintiff contends, there would be no reason to include limiting language within this provision. It should, likewise, be noted that decisions that have concluded otherwise, i.e. that unintended recipients, such as Plaintiff, have adequate standing to assert claims under the TCPA, are themselves, factually distinguishable from this case insofar as the intended recipient had not, as is the case here, given the creditor prior express consent to reach him or her at the dialed number. In *Andersen,* the number dialed by AFNI was actually obtained through skip trace efforts and not from the called party, much less the actual recipient. Other decisions upon which Plaintiff may rely were analyzed through the prism of Fed. R. Civ. Proc. 12 (b)(6) and are of limited value when juxtaposed against a motion for summary judgment pursuant Fed. R. Civ. Proc 56. See. for *e.g*., *D.G. ex rel. Tang v. William w. Siegel & Associates, Attorneys at Law,* F.Supp.2d, *2; 2011 WL 2356390 (N.D. Ill., 2011); see also, Opinion and

Order Denying in Part and Granting in Part Defendant's Motion to Dismiss, *Kane v. National Action Financial Services, Inc*., Case No. 11-11505, E.D. Mich. 2011 (November 7, 2011), Hon. Stephen J. Murphy.

On this basis and as set forth more fully, *infra*, the Court should reject Plaintiff's attempt to impermissibly broaden the category of persons that fall within the TCPA's ambit, giving effect to the express statutory limitations provided in §227 (b)(1)(B), and dismissing Plaintiff's claims for lack of standing.

### B.   Alliance Had Express Prior Consent to Contact the Called Party and Such Consent Was Never Vitiated, Therefore, Judgment Should Be Entered for Defendants

Even if the Court is satisfied that Plaintiff has both constitutional and prudential standing to proceed with his TCPA claim, a putative TCPA plaintiff must establish that: (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the called party.  47 U.S.C. §227(b)(1)(A).  Thus, although the TCPA prohibits autodialed calls to wireless numbers, the statute plainly provides an express exception from liability for autodialed and prerecorded messages made with the prior consent of the called party.  Plaintiff has not and cannot make this showing as it is clear that Defendants had the prior express consent of Morgan to contact her at the (810) 610-1233 number.

In 2008, the Federal Communications Commission ("FCC"), recognizing the significance of the "prior consent" exception to the orderly flow of communications between businesses and their customers, issued a declaratory ruling clarifying that the TCPA permits autodialed and prerecorded message calls to wireless numbers provided to the creditor by the called party. *Declaratory Ruling in re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 07-232 (Dec. 28, 2007; released Jan. 4, 2008).  In doing so, the

11

FCC specifically concluded that calls made by creditors to wireless numbers provided in connection with existing debts are entirely permissible. *Id.*, at paragraphs 1, 9-10.

The FCC further concluded that the provision of a cell number to a creditor, for e.g., as part of a credit application or as evidenced on purchase agreements or sales receipts, reasonably evidences prior express consent by the called party to be called regarding the obligation. *Id.* Thus, absent revocation of such consent by the party, the FCC ruled that creditors, such as Defendants, can rely on the provision of phone number by a called party for purposes of making autodialer or prerecorded message calls to the called party unless or until such consent is vitiated, which never occurred in this case.

This interpretation reconciles the language of the Act with the realities of modern commerce and is supported by the legislative history of the Act and prior rulings of the FCC. *See, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, (1992). In rendering its ruling, the FCC could have limited or restricted the prior express consent exception to phone subscribers, only, but it elected not to. Rather, the FCC interpreted the regulations to avoid an absurd result as the Court should do in this case. In fact, the Court must refrain from modifying the FCC's interpretation order consistent with the Hobbs Act.

The FCC's interpretation of the prior consent exception is all the more reasonable when one considers how interchangeable cell phones and/or cell phone numbers have become in this day and age. It is not uncommon, for example, for a husband to acquire a cell phone in his name, which is used solely by his wife. Accordingly, consistent with the FCC 2008 Order, a creditor given this cell number by the wife in conjunction with her individual health club membership could use its autodialer to call the wife regarding payment of her monthly dues without facing

liability under the TCPA. *This is the right result.*[2] If the wife subsequently revokes her prior consent to call the cell number using an autodialer and the health club continues to use its autodialer to call the cell phone number, liability would, thereafter, attach *as it should*. But the health club would not be liable to the husband, who may be true telephone subscriber but is not the "called party" in this scenario, *nor should it be*.

To suggest as Plaintiff does here, that the husband, himself, must provide the consent in this scenario would create an absurd result. Under Plaintiff's logic, the husband could sue the creditor for each and every autodialed call made to his wife at this number regardless of the fact that she provided the number to the health club in the first instance. Such a result would effectively turn the prior express consent exception on its head, resulting in an unreasonable construction of the statute. See, for e.g., *Chevron USA Inc v. NRDC*, 467 US 837, 843 (1984) (holding that when a statute is ambiguous or leaves terms undefined, a federal court must defer to the federal agency's interpretation of the statute, so long as the agency's interpretation is based on a reasonable construction of the statute). There is nothing within the four corners of the FCC's 2008 to suggest such a result.

Here, the record reflects that the called party, Leann Morgan, provided the (810) 610-1233 number to Defendants in conjunction with each of the 3 accounts for which Alliance was trying to reach Morgan. Consistent with the TCPA and the FCC's own interpretation, Defendants' unopposed evidence of prior express consent operates as a full and complete defense to Plaintiff's TCPA claims, warranting summary denial of Plaintiff's motion and corresponding entry of judgment in Defendants' favor.

---

[2] Liability would also attach, rightfully so, if the health club randomly autodialed the cell number for the purpose of selling gym memberships as the prior consent exception would not be applicable.

**C.    Even if Defendants' Actions Ran Afoul of the TCPA - And They Did Not –
Defendants' Actions Were Not Willful, Precluding A Treble Damages Award**

As set forth above, Defendants did not violate the TCPA because all of the calls made to

(810) 610-1233 were made with the prior express consent of the called party, Leann Morgan, in

conjunction with her existing accounts and was never vitiated.  Thus, Defendants' calls were

permissible even if the Court concludes that Defendants violated the TCPA, Plaintiff has offered

no evidence besides his own, self-serving conjecture that such actions were "willful" as that term

is used and understood in the TCPA.  The Court must, therefore, decline Plaintiff's invitation for

entry of a treble damages award because there is no admissible evidence upon which this Court

can conclude that Defendants actions were "willful."

To be sure, Defendants are not asserting an ignorance of law defense as Plaintiff glibly

suggests.  To the contrary, there is simply no evidence in the record upon which the Court can

conclude that Defendants intended to call anyone other than Leann Morgan, much less that

Defendants knew that the (810) 610-1233 was a cellular telephone number in the first instance.

*Known* cellular numbers are actually identified in a particular data field within Alliance's

account records.  Yet, a cursory review of the Morgan account documents confirms that none of

the cellular phone fields were populated with data of any sort, further supporting the conclusion

that Defendants actions were not willful.  Defendants do not, otherwise, utilize software to

identify or "scrub" for cellular numbers, nor are they required to under the law.

These material issues of fact plainly preclude a finding of willfulness as Plaintiff seeks

here.  See, *Fillichio v. M.R.S. Assocs.,* 2010 WL 4261442 (S.D. Fla. Oct. 19, 2010)(concluding

that material questions of fact regarding defendant's knowledge of whether the number at issue

was associated with a cell phone precluded entry of judgment on the issue of damages).  For this

reason, too, summary judgment is improper.

## IV.  CONCLUSION

For all of the reasons set forth, the Court should deny Plaintiff's Motion for Summary Judgment and instead enter judgment in Defendant's Favor on Plaintiff's TCPA claims.

Respectfully Submitted,

/s/ Charity A. Olson
CHARITY A. OLSON (P68295)
OLSON LAW GROUP
Attorneys for WFNNB and ADSC
106 E. Liberty, Suite 303
Ann Arbor, MI  48104
Tel: 734-222-5179
Fax: 866-941-8712

December 23, 2011          colson@olsonlawpc.com

## Proof of Service

I, Charity A. Olson, hereby state that on December 23, 2011, I served the foregoing document on all counsel of record via Uthe Court's ECF system.

/s/ Charity A. Olson
CHARITY A. OLSON (P68295)
OLSON LAW GROUP
Attorneys for WFNNB and ADSC
106 E. Liberty, Suite 303
Ann Arbor, MI  48104
Tel: 734-222-5179
Fax: 866-941-8712

15