UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Daniel D. Harris,

       Plaintiff,

v.                                    Case No.: 10-14867
                                    Honorable Sean F. Cox

World Financial Network National Bank,
Alliance Data Systems Corp., and Allied Data
Systems.

       Defendants.

_____/

## OPINION & ORDER

Plaintiff Dan Harris filed this action against Defendants World Financial Network

National Bank, Alliance Data Systems Corp., and Allied Data Systems, alleging violations of 47

U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"), and M.C.L. § 445.251, the

Michigan Collection Practices Act ("MCPA").  The matter is currently before the Court on

Plaintiff's Motion for Partial Summary Judgment as to TCPA claims and Plaintiff's motion to

strike evidence and testimony.  The parties have fully briefed the issues and the Court heard oral

argument on March 22, 2012.  For the reasons set forth below,  the Court shall GRANT

Plaintiff's motion for partial summary judgment and GRANT Plaintiff's motion to strike.

## BACKGROUND

Plaintiff filed this action on December 8, 2011, alleging two counts: 1) violation of the

Telephone Consumer Protection Act of 1991 and C.F.R. 16.1200 *et seq*.; and 2) violation of the

Michigan Collection Practices Act.  On September 22, 2011, Plaintiff filed a Motion for Partial

Summary Judgment as to the TCPA claims only.  (D.E. No. 60).

Pursuant to this Court's practice guidelines, Plaintiff's motion and supporting brief included a separate statement of undisputed material facts.  Defendants filed their response to Plaintiff's motion, and their supporting brief included a counter-statement of material facts.  The following facts, viewed in alight most favorable to the Defendants, are gleaned from the parties' statements and the uncontradicted documentary evidence submitted by the parties.

Plaintiff is the owner of a cellular telephone with a phone number with the last four digests of 1233 ("the 1233 number"), and maintains cellular telelphone service through Verizon Wireless.

Defendant World Financial Network National Bank ("WFNNB") is a national banking association that issues retail credit cards.  Defendant Alliance Data Systems Corp. ("Alliance") performs the servicing of these credit cards, including the billing and collections services.  Alliance uses an Avaya Predictive Dialing system, an automated dialing system, to make its collection calls.

On or about June 14, 2010, Leann Morgan ("Morgan"), an individual who is not a party to this lawsuit, opened a credit account with WFNNB from Woman Within (the "Woman Within account"), an online and catalog retailer.  Morgan's personal information, including a telephone number, was forwarded to WFNNB in order to process the credit account.  While applying for the credit account, Morgan provided Woman Within with Plaintiff's 1233 number.  WFNNV approved Morgan's account, and she made purchases that were charged to the Woman Within account.

On or about June 15, 2010, Morgan also applied for a WFNNB credit account with an

online and catalog retailer known as Roaman's (the "Roaman's account"). Again, WFNNB received Plaintiff's 1233 number as the telephone number associated with the credit application for Morgan's Roaman's account. Morgan's application was approved and she made purchases that were charged to the Roaman's account.

Similarly, on or about August 10, 2010, Morgan opened a third credit account with WFNNB through another online and catalog retailer called Brylane Home (the "Brylane account"). WFNNB again received Plaintiff's 1233 number as the contact number associated with the account. Morgan also made purchases that were charged to her Brylane account.

Morgan fell past due on all three of her credit accounts with WFNNB and Alliance initiated collection efforts by using the automated dialing system to place calls to what it believed to be Morgan's phone number.

Alliance called the 1233 number on August 18, August 28, and again on September 1 of 2010, and left a prerecorded message each time. From August 18, 2010, to October 27, 2010, Alliance called the Plaintiff's 1233 number 56 times using the automated dialing system.

Generally, when Alliance receives notice that they are calling a wrong number, that number can be removed from the Avaya calling system. It is Alliance's practice that, if an unauthorized, third-party[1] to an account notifies Alliance that the number they are calling is a wrong number, that number is removed from that specific account for which Alliance called. The phone number is not removed from all accounts or from the entire Avaya calling system. Alliance representatives are instructed to remove numbers from multiple accounts, or the entire

---

[1]An unauthorized, third-party phone call recipient is one who does not maintain the account for which Alliance is calling (i.e. – a person who is not the debtor).

system, only if the removal is requested by an actual cardholder or the actual debtor.  (Thomas Dep. at 160-161).  Defendants have the capability to configure the Avaya System to remove a phone number from all accounts associated with that phone number.  *Id.*

On August 23, 2010, Plaintiff answered a phone call from Alliance and stated to an Alliance representative that it should stop calling him because they were calling the wrong number.  After receiving additional calls from Alliance, Plaintiff answered another call from Alliance on September 4, 2010, and again notified the representative that Alliance was calling the wrong number.  Alliance contends that each time Plaintiff notified Alliance that the 1233 number was not associated with Morgan, Alliance removed Plaintiff's 1233 number from that particular account.

Plaintiff never received additional phone calls from Alliance that were associated with the accounts for which Plaintiff notified Alliance that they had the wrong number.  Plaintiff, however, continued to receive calls from Alliance regarding the third account.

On September 22, 2011, Plaintiff filed this motion for partial summary judgment as to the TCPA claims only.  After Defendants filed an amended response brief on December 23, 2011, Plaintiff also filed a motion to strike evidence and certain testimony that Defendants rely upon in their response brief.

LEGAL STANDARD

Plaintiff brings his Partial Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56 (c).  The party seeking summary judgment has the initial

burden of informing the court of the basis for its motion and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admission on file together with the

affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

*v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must

set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).  In deciding a motion for

summary judgment, a court must view the evidence and draw all reasonable inferences in favor

of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).

ANALYSIS

I.     <u>Plaintiff's Motion for Partial Summary Judgment and Defendants' Standing Argument:</u>

Plaintiff alleges that Defendants violated § 227(b)(1)(A) of the TCPA when Alliance

made numerous phone calls to Plaintiff's cellular phone without his consent.  Plaintiff also

alleges that the phone calls were made willfully and knowingly, and requests that the Court

impose treble damages against Defendants.

The TCPA makes it unlawful

> (A) to make any call (other than a call made for emergency purposes
> or made with the prior express consent of the called party) using any
> automatic telephone dialing system or an artificial or prerecorded
> voice –
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular
> telephone service, specialized mobile radio service, or other radio
> common carrier service, or any service for which the called party is

5

charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).  Thus, to establish a prima facie case under § 227(b)(1)(A), a plaintiff must show that: "(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient."  *Purgliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 at *7 (E.D. Mich. June 29, 2010) (Edmunds, J.).

The TCPA provides for a private right of action and permits a party to recover actual monetary loss for a violation of § 227(b)(1)(A), "or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B); *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012).  "The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited [calls]."  *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11 Cir. 2011) (quoting *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008)).  "The TCPA does not require any intent for liability except when awarding treble damages."  *Alea London Ltd.*, 638 F.3d at. 776.  Section 227(b)(3) provides, "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  47 U.S.C.§ 227(b)(3).  "Importantly though, the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct."  *Alea London Ltd.*, 638 F.3d at. 776.

In 2008, the FCC released a declaratory ruling in which it discussed the application of § 227(b)(1)(A) to creditors and debt collectors who use automatic dialing systems to contact

debtors, as Defendants did in this case.  *See In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1999*, F.C.C. 07-232, 23 F.C.C.R. 559

(Dec. 28, 2007; released Jan. 4, 2008).  In that ruling the FCC held:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

*Id*. at 564.  The FCC also addressed the defendants burden of proving consent:

> We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed. To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, ***we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.*** Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

*Id*. at 565 (emphasis added).

Before discussing Plaintiff's Motion for Summary Judgment, the Court will address

Defendants' contention that Plaintiff lacks standing to bring a claim under the TCPA.

Defendants assert that the statute only applies to "called parties" and Plaintiff is not a "called

party" under the statute.  Defendants reason that the plain language of the statute limits relief to

7

called parties to whom the calls were specifically intended.  Defendants further state that "to permit *any* person to bring a claim under 227(b)(1)(A) without regard to whether such person was the actual 'called party' would, as other courts have concluded, render the prior express consent exception a legal 'nullity.'"  (Def's SJ Resp. Br. at 4) (citing *Cellco P'ship v. Dealers Warranty, LLC*, 2010 WL 3946713 (D.N.J. Oct. 5, 2010)).  Defendants assert that, by not limiting the term "called party" to intended phone call recipients, and expanding standing to all phone call recipients, the Court would be exposing Defendants to "unlimited and potentially catastrophic liability for calls directed to an appropriate 'called party' but intercepted by another recipient, thereafter."  (*Id.* at 5) (citing *Leyse v. Bank of America National Ass'n*, 2010 WL 2382400, at *4 (S.D.N.Y. June 14, 2010).  Thus, under Defendants' logic, the "called party" in this case would be Morgan, rather than Plaintiff, because Defendants actually intended to contact Morgan.  Under this theory, Plaintiff would not be a "called party" under the statute and would lack standing to bring a claim under the TCPA.

Defendants rely on *Leyse v. Bank of America Nation Ass'n*, a district court case out of the District of Columbia, to support their claim that Plaintiff lacks standing.  In *Leyse*, Bank of America contracted DialAmerica to make telemarketing calls on its behalf.  DialAmerica placed a call to Genevieve Dutraux, but Dutraux's roommate, Leyse, answered the call.  Leyse brought a claim against Bank of America for violations of the TCPA, but the district court dismissed Leyse's claim for lack of standing because DialAmerica called the phone number associated with Dutraux and Dutraux was the actual intended recipient of the call.  Leyse merely intercepted the call.  DialAmerica neither called a phone number associated with Leyse, nor did it intend to call a phone number associated with Leyse.  The court declined to extend standing under the TCPA

to such incidental recipients. *Leyse*, 2010 WL 2382400 at *5-6.

Contrary to Defendants' position, this case is distinguishable from *Leyse*, and factually similar to *Kane v. National Action Financial Services, Inc.*, 2011 WL 6018403 (E.D. Mich. Nov. 7, 2011) (Murphy, J.). In that case, the plaintiff, Kane, received hundreds of phone calls on his cell phone from the defendant, National Action Financial Services ("NAFS"), a collection agency contracted by Blockbuster Video to collect on delinquent accounts. The phone calls placed to Kane by NAFS used a prerecorded voice and were placed in an attempt to collect on a delinquent account held by Seana Bartlett. Kane did now know Bartlett, had never given his phone number to Blockbuster, and did not owe any money to Blockbuster. Kane subsequently filed a claim against NAFS for violation of the TCPA. *Kane*, 2010 WL 6018403 at * 1.

NAFS claimed that Kane lacked standing to bring claims under the TCPA because he was not a "called party" in that he was an "incidental and unintended" recipient of the calls from NAFS. Distinguishing *Leyse*, the district court found that Kane had standing under the TCPA. Unlike Leyse, who merely intercepted a phone call directed to Dutraux on Dutraux's phone, NAFS actually called Kane's cell phone. The court stated, "Mr. Kane was *not* an *incidental* recipient of a call properly directed to someone else. NAFS, although it intended to reach Ms. Bartlett, also intended to, and did, call Mr. Kane's personal cell phone number." *Id.* at *7. The court held, "Mr. Kane has standing because the statute unambiguously grants standing to 'any person or entity' to bring a claim."[2] *Id.*

The facts in the instant case are almost identical to those in *Kane* and the Court agrees

---

[2]The district court in *Kane* also cites *Anderson v. AFNI, Inc.*, 2011 WL 1808779 (E.D. Pa. May 11, 2011), and *Tang v. Seigel*, 2011 WL 2356390 (N.D. Ill. June 14, 2011), which held, under similar facts, that plaintiffs had standing to sue under the TCPA.

9

that TCPA's language is broad enough to grant standing to plaintiffs such as Harris. Like Kane, Plaintiff has received calls on his own cellular phone from a party using an automated dialing system and intending to reach someone else. Unlike Leyse, Plaintiff did not merely intercept a call placed to a third-party's cellular phone. Although Alliance had the wrong phone number listed for Morgan, Alliance intended to, and did, call Plaintiff's cellular phone number. Plaintiff was not an incidental recipient who intercepted a phone call directed toward someone else, but rather, was the regular user of the cellular phone associated with the 1233 number. Because the TCPA is a strict liability statute, and because it plainly grants standing to "any person or entity," the Court concludes that Plaintiff has standing to bring claims under the TCPA.

After finding that Plaintiff is a "called party" under the statute, and because § 227(b)(1)(A) is a strict liability statute, it is clear that Defendants violated § 227(b)(1)(A). Defendants do not dispute any other elements of § 227(b)(1)(A). Defendants have provided no evidence that Plaintiff provided consent to receive phone calls from Defendants. To the contrary, Plaintiff actually notified Defendants that they should stop contacting him. Plaintiff has established all the elements of § 227(b)(1)(A). Plaintiff has shown that Defendants placed 56 calls to Plaintiff's cellular phone using an automated dialing system and left 3 prerecorded messages. (*See* Call Logs, Plf's Br., Ex. 5). Moreover, Plaintiff never consented to being called.

Accordingly, the Court shall grant summary judgment to the extent that Plaintiff seeks damages for violations of § 227(b)(1)(A).

II.   Defendants' violations of § 227(b)(1)(A) prior to August 23, 2010 were not willfully or knowingly made, but Defendants' violations of § 227(b)(1)(A) after that date were willful.

As stated above, § 227(b)(3) provides, "If the court finds that the defendant willfully or

10

knowingly violated this subsection or the regulations prescribed under this subsection, the court

may, in its discretion, increase the amount of the award to an amount equal to not more than 3

times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3).

"Importantly though, the intent for treble damages does not require any malicious or wanton

conduct, but rather is satisfied by merely 'knowing' conduct." *Alea London Ltd.*, 638 F.3d at.

776.

Plaintiff contends that Defendants willfully violated § 227(b)(1)(A) by: (1) simply

intending to place calls to Plaintiff's number; and (2) failing to disassociate Plaintiff's phone

number with all of Morgan's past due accounts.  (Plf's SJ Br. at 9).

The Court disagrees with Plaintiff's position that, in order to establish that Defendants'

conduct was willful or knowing, he must only demonstrate that Defendants intended to use the

autodialer to place the calls.  There are two flaws with this argument.  First, it neglects the

consent element of § 227(b)(1)(A).  In order for Plaintiff to prove that Defendants knew that they

acted in a manner that violated the statute (regardless if Defendants actually knew that they were

violating the statute), Plaintiff must also show that Defendants knew that Plaintiff did not

consent to the phone calls.  In this case, prior to Plaintiff notifying Defendants on August 23,

2010, Defendants could not have known that Plaintiff's 1233 number was not Morgan's phone

number.  Without knowing that the number associated with Morgan's account was actually

Plaintiff's number, Defendants' violations cannot be deemed willful or knowing.

Second, If the Court were to adopt Plaintiff's definition of willful then every violation of

§ 227(b)(1)(A) could be considered willful because every call would have been voluntarily

made.  A creditor or debt collector would be liable for treble damages for incidentally calling

11

any person with an automated dialing system where the actual debtor provided the wrong phone number to Defendants. Such a broad application of "willfull" or "knowing" would significantly diminish the statute's distinction between violations that do not require an intent, and those willfull and knowing violations that congress intended to punish more severely.

The Court does find, however, that Defendants' violations of § 227(b)(1)(A) after August 23, 2010 were willful, or made with a reckless disregard to Plaintiff's rights. Defendants' call center manager, Derrek Thomas, testified that on August 23, 2010 – the date that Plaintiff notified Defendants that they were calling the wrong number – Defendants removed Plaintiff's number from Morgan's Woman Within account. (Thomas Dep. at 198-200; *see also* Call Logs, Def's SJ Resp., Ex. D). Defendants, however, continued to call Plaintiff regarding Morgan's past due balances on her other two accounts. Similarly, on September 4, 2010, Defendants removed Plaintiff's number from Morgan's Roaman's account because Plaintiff again notified Defendants that they had the wrong number. (*See* Call Logs, Def's SJ Resp., Ex. E). Because Plaintiff had not contacted Defendants to notify them of a wrong number with respect to a call on Morgan's Brylane Home account, Defendants continued to place calls to Plaintiff's cellular phone regarding that account.

Although Defendants removed the Plaintiff's phone number from Morgan's Woman Within Account on August 23, 2010, the Court finds that Defendants' continuous phone calls regarding the other two accounts constitute willful violations of § 227(b)(1)(A). At that point, Defendants were put on notice that Plaintiff's phone number was not associated with Morgan, and Defendants were in a better position to review its system to ensure that Plaintiff's number was not tied to any of Morgan's remaining accounts.

12

Thomas, Defendants' 30(b)(6) witness, testified that Defendants' Avaya system could be programmed to purge a phone number from all accounts associated with that number. (Thomas Dep. at 157-161). When a third-party, that is, a person who is not the actual debtor on the past due account, notifies Defendants that they have the wrong number for an account, it is Defendants policy to remove that phone number from that account only. (*Id*.). Mr. Thomas stated:

> A: So I don't know when I'm opening [related] accounts they all fall under the same umbrella. So from a customer standpoint, if I call in and do maintenance on one account, I would have to call in separately to all three accounts, unless I was triggered that, hey, you've got duplicate accounts, do you want to do this?
>
> From a third-party standpoint, who in our minds hasn't opened the account, why would I go into the other two accounts? I wouldn't go into the other two accounts and do maintenance on those accounts based on an incorrect number that's sitting on accounts that are separate from that one.
>
> Q: That's – what you're saying is that's a choice that WFNNB makes or Alliance makes, correct?
>
> A: That's right.
>
> Q: And why is it that that choice was made to handle accounts that way?
>
> * * *
>
> A: Then if someone, like in this case, were to receive another call on another account, then they can call in and say, hey, I just got a phone call. I believe that it's an accident. Can you please remove that phone number? If it happens a third time, then that person knows the drill at that point. They can call in and have that number removed.

(*Id*. at 160-161).

Thus, based upon the testimony of Mr. Thomas, Defendants rely on the third-parties to

13

contact Defendants for each unintended phone call related to each separate account that a third-party receives, regardless if that third-party had, on a prior occasion, notified Defendants that they are calling the wrong number. A third-party, however, is in no position to know, nor would they have any reason to inquire, how many accounts are wrongly associated with his or her phone number. That information is strictly within the possession of Defendants.

As a result, after a third-party notifies Defendants that they are calling the wrong number, it is incumbent upon Defendants to determine whether any other accounts are associated with that number.[3] In fact, during oral argument, when asked by the Court to explain when a creditor or debt collector's calls become willfully or knowingly made, Counsel for Defendants stated:

> That time would be – other courts that have looked at it have said to the extent – at a minimum we know we're even calling a cell phone number . . .
>
> To the extent we have knowledge that we're calling a cell phone number and the consent that we are relying on has been vitiated and we continue calling. I would argue that that would certainly appear to be willful under court precedent.

(3/22/12 Hearing Tr. at 9-10.

The Court therefore finds that Defendants' failure to identify the additional accounts wrongly associated with Plaintiff's number after Plaintiff placed them on notice on August 23, 2010, combined with Defendants additional automated phone calls to Plaintiff's cellular phone, constitutes a willful violation of § 227(b)(1)(A). Defendants displayed a reckless disregard for

---

[3]The Court recognizes that determining whether a phone number associated multiple accounts is the correct phone number for each those accounts could be a burdensome task, especially when that phone number is associated with a business entity or public agency. Nonetheless, the FCC explicitly places this burden of consent on the credit or debt collector. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1999*, 23 F.C.C.R. at 565 ("Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.").

14

Plaintiff's rights under the TCPA and this finding is consistent with the FCC's determination that it is a creditor or debt collector's burden of proving consent to call a party's cellular phone. Plaintiff is entitled to treble damages for any prerecorded messages and additional calls placed to Plaintiff's cell phone after August 23, 2010.

III.      Plaintiff's Motion to Strike Evidence and Testimony:

In his motion to strike, Plaintiff requests that the Court not consider the following allegedly inadmissable evidence offered by Defendants in their response brief to Plaintiff's Motion for Partial Summary Judgement: (1) computer screen prints of Morgan's credit accounts; and (2) certain deposition testimony of Derrek Thomas, Defendants' 30(b)(6) witness and agent for Defendants, and Andrea Dent, a representative for Defendants' legal department.

At the March 22, 2012 hearing, Plaintiff's counsel clarified that Plaintiff does not seek to exclude the testimony of Mr. Thomas and Ms. Dent, but really only seeks to exclude the computer screen printouts of Morgan's credit accounts.

Fed. R. Civ. P. 56(c) provides:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Moreover, Fed. R. Civ. P. 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be

15

admissible in evidence." Fed. R. Civ. P. 56(c)(2).

> A.   <u>The Court will not consider the screen prints as relevant evidence of Plaintiff's consent but will consider them as evidence of Defendants' intent prior to August 23, 2010.</u>

One of the elements of a TCPA claim under § 227(b)(1)(A) is that Defendants placed phone calls to a person without the consent of that person. The burden of establishing prior consent is on the defendant. *See Purgliese,* 2010 WL 2632562 at *7. In support of Defendants' claim that Morgan gave prior consent to contact her, Defendants have submitted the aforementioned computer screen prints of Morgan's account. Counsel for Defendants stated at the March 22, 2012 hearing that Defendants are offering the account statements solely for the purpose of showing Morgan's consent. (3/22/12 Hearing Tr. at 3-4).

Even if Morgan gave consent, the Defendants do not contend that *Plaintiff* actually provided consent to be contacted. As discussed above, § 227(b)(1)(A) of the TCPA is a strict liability statute as it relates to a defendant's initial liability, but requires the Plaintiff to prove intent in order to obtain treble damages.

Defendants cite to the FCC's January 4, 2008 declaratory ruling, which provides that creditors may use credit applications as proof of a debtor's consent to be contacted. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1999*, F.C.C. 07-232, 23 F.C.C.R. 559, 565 (Dec. 28, 2007; released Jan. 4, 2008). However, because Morgan's consent, as the debtor, is irrelevant, and there is no evidence of Plaintiff's consent, the account statements sought to be admitted by Defendants are irrelevant if they are offered only to show Morgan's consent. Accordingly, the Court declines to consider the screen prints of Morgan's account statements as evidence of Plaintiff's consent. These printouts are, however,

relevant to whether Defendants willfully or knowingly violated § 227(b)(1)(A) prior to August 23, 2010, because Defendants' intent before Plaintiff notified Defendants that they had the wrong number may be attributed to their reliance on the wrong phone number contained in their records.

      B.    <u>The Credit Applications are hearsay that fall within the business records exception.</u>

Plaintiff also seeks to preclude the admission of the screen shots and Morgan's credit applications because they are hearsay.

First, Plaintiff contends that the records should not be considered by the Court because they are not reliable documents. Plaintiff points toward the fact that the three credit applications do not reflect Morgan's correct phone number and indicate two different street numbers for Morgan's address. Plaintiff, however, is overlooking the critical issue of Defendants' intent. As stated above, by concluding that Plaintiff is a "called party" under § 227(b)(1)(A), the credit applications are irrelevant to the issue of whether Plaintiff provided consent. These records would then only be relevant to the extent that they support Defendants' position that they relied on these records for Morgan's phone number of record. The fact that the phone number indicated on the credit applications is not Morgan's is obvious and is the very reason Defendants mistakenly placed calls to Plaintiff. Thus the accuracy of the information contained in the credit applications is not an issue that the Court needs to consider. Ms. Dent testified that the contact information gathered by Defendants for their account records is pulled from a debtor's credit application or credit report. To the extent that the records simply reflect what phone number Defendants had on record for Morgan (regardless if it was the correct number) – the only relevant fact for the Court's analysis – Plaintiff has not provided any reason to question the

17

accuracy of that information.

Second, Plaintiff contends that the records cannot be admitted under the business records hearsay exception. Plaintiff contends that Ms. Dent's testimony regarding the origination of the creditor applications and a retailer's process in obtaining the information on the application is not sufficient to establish a proper foundation for admission of the credit applications. Plaintiff asserts that Ms. Dent is not Defendants' 30(b)(6) witness and does not have personal knowledge of how these specific records were created, but testified only to a general understanding of how the credit application process works.

Under Fed. R. Evid. 803(6), in order for a party to admit a business record, the business record must meet the following requirements:

> (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*United States. v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (quoting *Redken Laboratories, Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir. 1988)).

These requirements must be "shown by the testimony of the custodian or another qualified witness." FED. R. EVID. 803(6)(d). "Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record." *Weinstock*, 153 F.3d at 276. "The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Likewise, [t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have

18

personal knowledge of their preparation." *United States. v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (internal quotations marks and citations omitted).

　　Although she is not Defendants' designated 30(b) witness,[4] the Court finds that Ms. Dent is a qualified witness under Fed. R. Evid. 803(6)(d).  Ms. Dent testified in great detail about the records that Plaintiff seeks to exclude.  (Dent Dep., 9-34).  During the deposition of Mr. Thomas, Plaintiff's counsel acknowledged Ms. Dent's familiarity with WFNNB's records, and she was specifically sworn in during the course of Mr. Thomas's deposition solely for the purpose of laying a foundation for Mr. Thomas's testimony.  (Thomas Dep. at 148-153.)  Ms. Dent testified:

> The overall system that's used to process the applications hasn't changed a lot. Particularly the documents that we've provided related to the applications are documents that are pulled out of an archived system.  The, [sic] when the application is still in the system, there are multiple different views that you can look at the information within. When the . . . application has been in the system for about 30 days or so, it then is sent to an archiving system with just the limited information – exactly what we provided to you is a shot of the processing history of the application. That hasn't changed at all since my days in new accounts.

(Dent Dep. at 12).  Ms. Dent further testified that Defendants' archiving system gathers data from both credit applications and credit reports for each debtor account.  (*Id*. at 15).  Ms. Dent explained:

> I can tell you that the information that's on this archived report is exactly the same as one of the views within the new accounts system. Just like within some of the screen shots from our customer service system, there are different ways that you can view the information

_____

[4]In his reply brief to Defendants' response in opposition to Plaintiff's motion to strike (D.E. No. 79), Plaintiff suggests that the exclusion should be applied as a sanction for failing to produce a competent witness under Fed. R. Civ. P.  30(b)(6).  This argument lacks merit because Defendants produced a witness sufficiently competent to testify to the accuracy and maintenance of Defendants' business records.

within the system. The information that's on this document is literally what one page of the new accounts system in different view forms would look like.

\* \* \*

A:  Essentially what happens is that the store associates will swipe the reference card through the register. They will key in certain numeric data. Specifically – I don't know if they key in their actual store number, and I believe they would key in their own associate number, whatever their identifying number is at the store.  They would key in the applicant's social security number, date of birth, street number, zip code, home phone, and work phone. The credit report would then be pulled by the system, assuming that it doesn't bump up against something that would prevent the credit report from being pulled as in there being perhaps a fraud hit or that the applicant already has an account with us. When the credit report is pulled, the system will look at the address information, the street number and zip code that was entered and what's the current information on the credit report and the alphabetic information, the street name, and then the city and state would be pulled from the credit report.

Q:  Okay. What about phone number information?

A: Phone number is keyed in. In a store environment like we just talked about, the phone number would be entered by the associate. I'm not aware of any instance in any application scenario where the phone number comes from the credit report.

(*Id*. at 18-20).  Contrary to Plaintiff's position, it is not necessary that Ms. Dent know exactly how the information was inputted or gathered for Morgan's accounts.  *See generally Jenkins*, 345 F.3d at 935.  It is clear from her testimony that Ms. Dent's familiarity with Defendants' record-keeping system, knowledge of how data is uploaded to Defendants' system, and her knowledge of how the records are maintained, qualify her under Fed. R. Evid. 803(6). Moreover, the fact that Defendants incorporated data from a third-party does not affect the application of the business record exception.  The information obtained from third-party retailers is essential to Defendants' regularly-kept account records.  *See United States v. Travers*, 114

20

Fed. Appx. 283, 288 (9th Cir. 1993) ("Records need not actually be prepared by the business to constitute business records, so long as they are received, maintained, and relied upon in the ordinary course of business.").

Accordingly, the Court declines to strike the screen prints from evidence for the purposes of showing Defendants' intent prior to August 23, 2010, because they are business records kept during the regular course of business. As previously stated, however, the screen prints are irrelevant to the issue of consent and the Court will not consider the screen prints as evidence of Plaintiff's consent.

CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment (D.E. No. 60) is GRANTED.

The Court shall award statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(B), for each phone call and prerecorded message Defendants placed to Plaintiff's cellular phone.

The Court shall also award triple damages, pursuant to 47 U.S.C.§ 227(b)(3), for the phone calls and prerecorded messages Defendants placed to Plaintiff's cellular phone after August 23, 2010 – the date on which Plaintiff first notified Defendants that they had the wrong number and that he was not associated with Morgan.

IT IS FURTHER ORDERED that Plaintiff's motion to strike (D.E. No. 74), is GRANTED IN PART and DENIED IN PART.

The Court grants Plaintiff's motion to strike to the extent that the Court will not consider the screen prints of Morgan's accounts as evidence of Morgan's consent. The Court denies Plaintiff's motion because the Court may consider the screen prints of Morgan's accounts as

21

evidence of Defendants' intent prior to August 23, 2010.  The Court also denies Plaintiff's

motion to strike as it relates to the deposition testimony of Derrek Thomas and Andrea Dent

because Plaintiff is no longer seeking to exclude this testimony.

      The only remaining claims in this action are Plaintiff's claims under the Michigan

Collection Practices Act, M.C.L. § 445.251.

      IT IS SO ORDERED.

                         S/Sean F. Cox
                         Sean F. Cox
                         United States District Judge

Dated:  April 3, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 3, 2012, by electronic and/or ordinary mail.

                         S/Jennifer Hernandez
                         Case Manager